## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENEEN L. MONTGOMERY-SMITH,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6369** |
| **LA. DEP'T OF HEALTH AND HOSPITALS, ET AL.**<br>    **Defendants** | **SECTION: "E"(3)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendants pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff filed an objection to the Defendants' motion.[2] For the reasons that follow, the Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I.      Procedural Background

On or about November 30, 2015, Plaintiff Deneen L. Montgomery-Smith filed a complaint against Defendants, The State of Louisiana, through its Department of Health and Hospitals ("DHH") Office of Public Health-Louisiana Center for Records and Statistics, and against Devin George, Nadine Smith, and Darlene Warren-Smith in their individual and official capacities.[3]  On April 25, 2016, the Court issued an Order dismissing Defendants' motion without prejudice, granting plaintiff leave to amend her complaint, and allowing Defendants the opportunity to re-urge the motion upon the filing of Plaintiff's amended complaint.  On May 9, 2016, Plaintiff filed a First Supplemental

---

[1] R. Doc. 30.
[2] R. Doc. 27.
[3] For the time periods covered, Darlene Warren-Smith was no longer a state employee and instead, was an independent consultant to DHH. *See* R. Doc. 23.

and Amended Restated Complaint, which is the subject of the Defendant's instant Motion to Dismiss.

II.    Statement of Facts

Plaintiff Deneen Montgomery-Smith alleges she is an African-American female who is more than 40 years old, has more than 25 years of experience with the State of Louisiana and has more than 12 years of experience with the Louisiana Department of Health and Hospitals.  Plaintiff alleges that she worked at the DHH-Office of the Bureau of Protective Services and was promoted to the position of APS Supervisor on March 30, 2004, where she worked until July 30, 2007. On this date, Plaintiff alleges she was transferred without her agreement to the DHH-Office of Public Health after she filed an EEOC charge and a lawsuit for discrimination, retaliation, harassment, failure to promote, and denial of merit increases.  Plaintiff states that the lawsuit was filed on April 13, 2007 in the Civil District Court for the Parish of Orleans. Plaintiff filed a second lawsuit on October 24, 2008 in this Court.

Montgomery-Smith alleges that shortly after DHH was served with her first lawsuit, administrative officials of DHH began conspiring to retaliate and transfer her from her supervisory position at the Office of Protective Services to a non-supervisory position at the DHH Office of Public Health-Vital Records.  Soon after her transfer to Vital Records, the Plaintiff alleges that she began to be subjected to isolation and a hostile work environment by Nadine Smith, Program Manager 2, the Plaintiff's direct supervisor, and Devin George, Program Manager 3, the direct supervisor of Nadine Smith. Plaintiff contends that both Nadine Smith and Devin George were aware that she had been transferred to Vital Records and that she had previously filed grievances, lawsuits, and made charges against DHH, and they began to isolate her.

According to the Plaintiff, when she was removed to Vital Records, she was subjected to a hostile work environment through isolation and humiliation including, but not limited to the following: (1) Administration, including, but not limited to, Darlene Smith, Devin George, and Nadine Smith, resented that Plaintiff had been forcibly removed to their department and that the Program Monitor position had been created prior to her reassignment; (2) Plaintiff was not provided a written job description; (3) she was placed in an office alone; (4) she was required to work in archives (where molded records were kept following Hurricane Katrina); (5) she was also required to work in various departments at Vital Records such as Amendments, Acceptance, and Issuance; (6) she went from supervising investigators, insuring the safety, well-being and lives of Louisiana's most fragile residents to issuing birth, death and marriage certificates; (7) she kept looking for opportunities to advance herself to no avail; (8) when she finally saw an announcement for a position that she qualified for, no one at Vital Records would provide her with the job description to update her state employment application; (9) Human Resources told her she had no job description; (10) she was reprimanded by Devin George and written up for requesting her job description; (11) she was scolded for going to Human Resources and not following the chain of command through her immediate supervisor, Nadine Smith; (12) she was not advised beforehand that she was only permitted to speak to her immediate supervisor about an issue that is usually handled by Human Resources; (13) she was advised during the official reprimand by Devin George that the reprimand came from Baton Rouge; (14) she was continued on a supervisory plan wrongfully initiated by the Bureau of Protective Services, when she was reassigned to Vital Records; (15) she was silenced and not allowed to make inquiries to anyone; (16) when she was wasn't working in archives or cleaning files, she had to study on her own the laws that

governed Vital Records; (17) upon the retirement of Valerie Helmester, she was assigned by Devin George duties previously assigned to Ms. Helmester of processing requests from government agencies; (18) she learned that, although her direct supervisor was Nadine Smith, she was required to report directly to Devin George; (19) she was directed by Devin George to prepare letters informing customers of agency entitlement requirements and processing requests because of errors made by Ms. Helmester; (20) she was assigned by Devin George to write and prepare letters in response to the requests or questions that he received; (21) she was advised by Darlene Smith through a staff meeting that there would be a reorganization of Vital Records which would bring advancement opportunities for the staff; (22) she was denied advancement opportunities and retaliated against, and on information and belief, Darlene Smith hired new staff to the newly reorganized positions that included supervisory positions; (23) Darlene Smith began detailing and promoting less qualified employees such as Robin Lewis and Kathleen Crochet ahead of Plaintiff; (24) Nadine Smith stopped customer service department employees from speaking with Plaintiff; (25) former friend Jemimah Mikel distanced herself from Plaintiff because Mikel was told not to associate with Plaintiff  because she "sued people;" (26) she was placed in a position of being afraid of reprisal by Nadine Smith so Plaintiff did not say anything; (27) Plaintiff was forced to be isolated in her office and to do her job in silence; (28) although she was a Program Monitor, Devin George, Darlene Smith, and Nadine Smith never included her in meetings, never discussed changes in the laws that affected Vital Records with her, and never discussed with her changes or concerns with how the agency performed or processed requests; (29) Plaintiff was alone and voiceless, left to figure out things by hearing changes on the news, grumbling staff, and studying the law; (30) she was never assigned to any department to be included in meetings; (31) she was

forced to take stress leave in 2015; and (32) she received "rejection letters upon being returning from stress leave and on her birthday."[4]

Plaintiff contends that although the lawsuits she filed in 2007 and 2008 were settled in 2011, she continues to be subjected to retaliation, isolation, and a hostile work environment at DHH.

Plaintiff further alleges that in 2013, Darlene Smith retired from DHH as the State Registrar, and shortly thereafter (1) Devin George was promoted to the position of Center Director/State Registrar, and (2) Nadine Smith was appointed to the position of Assistant Center Director/State Registrar. Plaintiff alleges that Darlene Smith then returned as a consultant to the Center Director/State Registrar under contract to DHH-Louisiana Center for Records and Statistics.

Plaintiff alleges that upon information and belief, Darlene Smith and Nadine Smith have met with Devin George to discuss with him who should be promoted and who should not and they have specifically conspired not to promote the Plaintiff, not to detail her, and/or not to offer her other advancement opportunities.  Additionally, Plaintiff alleges that upon information and belief, Nadine Smith has warned other employees of DHH not to associate with the Plaintiff because Plaintiff has previously filed grievances, charges of discrimination, and/or lawsuits against DHH.

Montgomery-Smith further contends that, after Darlene Smith returned as a consultant, she immediately began acting in a manner intended to intimidate Plaintiff including, but not limited to glaring at her, refusing to speak to her, isolating her, and upon information and belief, Darlene Smith advised Devin George on how to handle the day to day operations of the agency.

---

[4] R. Doc. 23, at 5-8.

In addition to allegedly conspiring not to promote the Plaintiff, or offer her advancement opportunities, Plaintiff contends that Devin George has retaliated against her and has refused to meet with her to investigate grievances filed by her.  Plaintiff also alleges that Devin George has refused to hold hearings regarding her grievances, and has specifically advised Plaintiff that he cannot meet with her unless another employee from the Baton Rouge office is present.  Plaintiff alleges that upon information and belief, other employees in the New Orleans office who have filed lawsuits against DHH are not restricted to only meeting with the Center Director/State Registrar in the presence of an employee from Baton Rouge.

Plaintiff also alleges that she has applied for and been denied multiple positions with DHH, although she is the better qualified candidate.  These applications include:

1. Program Manager 1-B (August 12 and August 26, 2014);
2. Program Manager 1-A (August 12, 2014);
3. Program Monitor Supervisor (August 28, 2014);
4. Program Monitor Supervisor (February 18, 2015);
5. Program Monitor (February 18, 2015);
6. Program Manager 1-B (August 29 and September 15, 2015).

Plaintiff also alleges that on October 7, 2015, Devin George reported that Robin Lewis had taken over the role as Deputy State Registrar of Vital Records, that Jemimah Mickel would transition to the role of Director of Operations for Vital Records, that Omar Khalid would transition to the role of Quality Management Unit Director, that Jira-Shea Davis would serve as Field Services Manager, and that Mary Moss would transition to the role of Amendments Manager. Plaintiff alleges, upon information and belief, that she was better qualified than all the persons promoted by Devin George as listed in his October 7, 2015 email and upon information and belief, all applicants were under the age of 40. Plaintiff alleges that she has not been promoted commensurate with her education, which consists of a Bachelor's Degree in Criminal Justice/Sociology and a Master's Degree in

6

Criminal Justice, training, and experience, when compared to employees under the age of 40.

Plaintiff filed her initial charge with the EEOC on March 26, 2015.  The Plaintiff asserts in her amended complaint that she received a right to sue letter on August 31, 2015 in connection with the March 26, 2015 EEOC charge. Plaintiff further asserts that "out of an abundance of caution," she filed a subsequent EEOC charge on November 5, 2015 for continuing discrimination between July 1, 2015 and October 7, 2015, and requested a right to sue letter but has not yet received one.

## **LEGAL STANDARD**

### I.   Motions to Dismiss Pursuant to Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[5] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[6] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[7] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[8] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule

---

[5] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

[6] *See* Fed. R. Civ. P. 12(b)(1).

[7] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[8] *In re FEMA*, 668 F.3d at 287.

12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[9]

## II.    Motions to Dismiss Pursuant to Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[10] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[13] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[14]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[15] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[9] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[12] *Id.*

[13] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[14] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[15] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[16] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[17]

Further, a district court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the claim.[18] Accordingly, since Plaintiff's EEOC charges are referenced in Plaintiff's First Supplemental and Amended Related Complaint and are central to her claim, any reference to EEOC documents does not justify converting Defendant's 12(b)(6) motion into a motion for summary judgment.[19]

## **ANALYSIS**

### I.  Plaintiff's Title VII Claims

#### a.  Plaintiff's Retaliation and Hostile Work Environment Claims Against Her Employer

Although Plaintiff's employer, the Louisiana Department of Health, is generally entitled to Eleventh Amendment sovereign immunity,[20] the Fifth circuit has "long recognized that Congress clearly abrogated the states' Eleventh Amendment Immunity in enacting Title VII."[21] As a result, Plaintiff's Title VII claims against her employer are not barred by Sovereign Immunity.

---

[16] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

[17] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[18] *See, e.g., Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *In Re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[19] Although the Plaintiff does not attach the referenced EEOC charges to her Complaint, the Court may consider Plaintiffs EEOC charges, and her right to sue letter, either as referenced in the complaint or as public records subject to judicial notice. Any reference to EEOC documents does not convert Defendants' motion to dismiss to a motion for summary judgment. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).

[20] *See Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 589 n.20 (E.D. La. 2010) ("The Fifth Circuit has determined that the Department of Health and Hospital's predecessor was an alter ego of the State of Louisiana, and was thus entitled to sovereign immunity." (citing *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987)). As previously explained, pursuant to legislation passed by the Louisiana Legislature in its 2016 regular session, the Louisiana Department of Health and Hospitals is now known as the Louisiana Department of Health.

[21] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 n.1 (5th Cir. 2002) (citing *Ussery v. Louisiana ex rel. La. Dep't of Health & Hosps.*, 150 F.3d 431, 434-35 (5th Cir. 1998)).

b. <u>Plaintiff's Retaliation and Hostile Work Environment Claims Against the Individual Defendants in their Official and Independent Capacities</u>

To the extent Plaintiff seeks to allege her Title VII claims against Devin George, Nadine Smith and Darlene Smith in their individual and official capacities, it is clear that Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6). Despite the reference in the statute defining the term employer to include any agent of the employer, the Fifth Circuit has held that Title VII does not impose individual liability.[22] Further, the Fifth Circuit has held that "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity."[23] As a result, Plaintiffs Title VII claims against the individual Defendants in both their individual and official capacities are dismissed.

c. <u>Exhaustion of Administrative Remedies</u>

In their motion to dismiss, Defendants argue the Plaintiff's Title VII claims should be dismissed for failure to exhaust her administrative remedies.[24] The Defendants maintain that a review of Plaintiff's March 26, 2015 and November 5, 2015 EEOC charges "show that they contain insufficient factual allegations to trigger an EEOC investigation and to put [D]efendants on notice of the existence and nature of the alleged claims."[25]

A plaintiff may not pursue Title VII claims in federal court unless she has exhausted all of the available administrative remedies.[26] "Exhaustion occurs when the

---

[22] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("While Title VII defines the term employer to include 'any agent' of an employer, this circuit does not interpret the statute as imposing individual liability for such claim.").
[23] *Id.* (citing *Indest*, 164 F.3d at 262).
[24] R. Doc. 30-1, at 10-13.
[25] *Id.* at 12.
[26] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *Hall. v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007). *See also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002). *See also Vicknair v. La. Dept. of Public Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014) (explaining that the administrative exhaustion is required because "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discriminaton claims.") (quoting *Pacheco v. Mineta*, 338 F.3d 783, 788-89 (5th Cir. 2006)).

plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."[27] Due to the exhaustion requirement, a court may not entertain a plaintiff's Title VII claims that fall outside the scope of the EEOC charge.[28] To determine the scope of the EEOC investigation, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."[29] The Court must make this determination "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"[30] "In other words, the court must determine whether the claims in the complaint are 'like or related to the claims in the charge.'"[31] The Fifth Circuit has explained that although an EEOC charge should be liberally construed, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."[32]

### 1. Plaintiff Exhausted Her Administrative Remedies With Respect to her March 26, 2015 EEOC Charge Against DHH

It is not disputed that on March 26, 2015, Plaintiff filed a charge with the EEOC. It is also not disputed that she received a right to sue letter in connection with this charge on August 31, 2015. Plaintiff's March 26, 2015 charge states:

> I began my employment with Department of Health and Hospitals/ Office of Public Health/Vital Records in September, 2002 most recently as a Program Monitor earning $2468 bi monthly. I have been subjected to unfair treatment due to my age and retaliated against for filing prior claims with the EEOC, Lawsuits and Grievances. I have been denied promotional and progressive advancement opportunities. I have suffered isolation,

---

[27] *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)).

[28] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008).

[29] *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

[30] *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

[31] *Prewitt*, 927 F. Supp. 2d at 447 (quoting *Memon v. Deloitte Consulting, LLP*, 779 F. Supp. 2d 619, 635 (S.D. Tex. 2011) (citing *McClain*, 519 F.3d at 273)).

[32] *McClain*, 519 F.3d at 273 (alteration in original) (quoting *Pacheco*, 448 F.3d at 788-89).

intimidation, a hostile work environment, and loss of financial opportunities. The agency has been promoting younger individuals. The company employs over 500 persons.

No reason was given for the action taken against me.

I believe I have been discriminated against because of age, 50 years, and retaliated against in violation of Title VII of the Civil Rights of 1964, as amended.[33]

The Defendants' argument that Plaintiff's charge contains insufficient factual allegations to put the Defendants on notice is unpersuasive. Plaintiff's charge specifically includes that she was denied promotional and progressive advancement opportunities, and has suffered isolation, intimidation and a hostile work environment due to her age, and the fact that she had filed prior EEOC claims and lawsuits against the Louisiana Department of Health and Hospitals.[34] As a result, with respect to her March 26, 2015 charge, the Court finds that the Plaintiff has exhausted her administrative remedies for her claims of retaliation and hostile work environment.

### 2. Plaintiff Has Not Exhausted Her Administrative Remedies With Respect to Her November 5, 2015 Charge

Plaintiff states that out of an abundance of caution, on November 5, 2015, she filed another charge of discrimination and retaliation for continuing discrimination between July 1, 2015 and October 7, 2015, and a right to sue letter was requested.[35]

As explained above, a plaintiff in an "[e]mployment discrimination [case] must exhaustion administrative remedies before pursuing claims in federal court." [36] "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." [37] "'[T]he receipt of a right-to-sue letter is a condition

---

[33] R. Doc. 30-2, at 1.
[34] R. Doc. 27-1, at 3.
[35] R. Doc. 23, at ¶ 34.
[36] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 278-79 (5th Cir. 2002).
[37] *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 78-89 (5th cir. 1996)).

precedent' that can be cured by subsequent receipt of the letter."[38] The Plaintiff, citing *Prewitt v. Continental Automotive*, contends that while she has not yet received a right to sue letter, the Court should nonetheless take judicial notice of her November 5, 2015 EEOC Charge.[39] However, the court in *Prewitt* only took judicial notice of the EEOC charge and the right-to-sue letter because the plaintiff in that case attached the respective documents to his response in opposition to the defendant's motion to dismiss.[40] In this case, Plaintiff Montgomery-Smith has not produced any such documents and *Prewitt* is therefore inapposite.

In *Gupta v. East Texas State University*, the Fifth Circuit explained the exception to the rule requiring exhaustion of administrative remedies which allows a plaintiff to pursue an unexhausted retaliation claim if the acts underlying the retaliation claim came after and in response to a prior exhausted Title VII discrimination claim.[41] "Whether *Gupta* is still good law, however, is the subject of some debate. Indeed, the Circuits that have considered whether *Gupta*-like rules were abrogated by the Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) are split."[42] But this Court need not weigh in on this debate because the *Gupta* exception is not triggered when a "plaintiff simultaneously alleges discrimination and retaliation claims on the heels of a previously-exhausted discrimination claim."[43] Because the Plaintiff's second charge is not limited to advancing a retaliation claim arising from her discrimination charge, it falls outside the scope of the *Gupta* exception.[44] Accordingly, because the Plaintiff has not

---

[38] *Gorman v. Verizon Wireless Texas, LLC*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982)).
[39] R. Doc. 27 p.7 (citing *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435 (W.D. Tex. 2013)).
[40] *See Prewitt*, 927 F. Supp. 2d 435.
[41] *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981).
[42] *Phipps v. Hous. Auth. Of New Orleans*, 2016 WL 164916, at *4 (E.D. La. Jan. 13, 2016) (collecting cases).
[43] *Id.*
[44] *See id.*

produced a right-to-sue letter relating to her November 5, 2015 EEOC complaint,[45] Plaintiff has not exhausted her administrative remedies with respect to her claims alleged in her November 5, 2015 EEOC compliant and therefore these claims must be dismissed. Stated differently, Plaintiff's Title VII claims based on acts that occurred after March 26, 2015 are dismissed for failure to exhaust.

    d.  <u>Temporal Scope of Plaintiff's Title VII Claims</u>

       Pursuant to Title VII, a charge is timely when it is filed with the EEOC within 180 days of the alleged discrimination.[46] However, because Louisiana is a "deferral" state, the filing period is extended to 300 days.[47] Although exhaustion requires the receipt of a statutory notice of a right to sue, "'the receipt of a right-to-sue letter is a condition precedent' that can be cured by subsequent receipt of the letter."[48] Plaintiff can recover only for acts occurring within the 300 days before March 26, 2015, unless the "continuing violation" doctrine applies. If the continuing violation doctrine does not apply, events which occurred before May 30, 2014 are time barred.[49]

       Plaintiff contends the typical 300 day limitation period is inapplicable in this case under the "continuing violation" doctrine.[50] "The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."[51] "The continuing violation doctrine is designed to 'accommodate plaintiffs who can show that there has been a pattern or policy of

---

[45] R. Doc. 27, at 7.
[46] 42 U.S.C. § 2000e-5(e)(1).
[47] *See, e.g., Deleon v. General Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014).
[48] *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 1996) (quoting *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982)).
[49] May 30, 2014 is 300 days before March 26, 2015.
[50] R. Doc. 27, at 5-8.
[51] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)).

discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely."[52]

1. Plaintiff's Retaliation Claims For Acts That Occurred Prior to May 30, 2014 Have Prescribed

With respect to Plaintiff's retaliation claims, the Supreme Court in *Morgan* explained that each discrete discriminatory act of retaliation "starts a new clock for filing charges alleging that act. The charge, therefore must be filed within the 180– or 300-day time period after the discrete discriminatory charge occurred."[53] The Plaintiff asserts that the Supreme Court's decision in *Burlington Northern & Santa Fe Railway. Co. v. White*, establishes that the anti-retaliation provision is not coterminous with Title VII's substantive provisions and therefore the Court's decision in Morgan is not controlling.[54] However, the Court's holding in White did not address the limitations period under which an employee can bring a claim for retaliation, but instead addressed whether the application of Title VII's retaliation provision is limited to the employer's employment or workplace actions. The Court's decision in *Morgan*, is still the applicable standard in determining the limitations period for filing a claim of retaliation. As a result, the Plaintiff's retaliation claims based on actions that occurred prior to May 30, 2014 are time-barred.[55] Accordingly, Plaintiff's retaliation claims are limited to those based on acts occurring between May 30, 2014 and March 26, 2015.

---

[52] *Id.* at 351-52 (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).
[53] *Morgan*, 536 U.S. at 113.
[54] R. Doc. 27, at 5-6 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).
[55] However, as the Supreme Court explained in *Morgan*, the 180- or 300-day time period does not "bar an employee from using the prior acts as background to support a timely claim." *Id.*

2.  <u>Plaintiff's Hostile Work Environment Claim For Acts Occurring Prior to May 30, 2014 Has Not Prescribed</u>

With respect to Plaintiff's hostile work environment claim, the Fifth Circuit has explained:

> Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts: "He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."[56]

The Fifth Circuit has identified at least three factors that may be considered in determining whether a continuing violation exists: (1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) Are the alleged acts recurring or more in the nature of an isolated work assignment or incident? (3) Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?[57] "If the alleged acts involve the same type of discrimination, occur frequently, and indicate to the employee that the continuing existence of consequences is likely, it is probable that they rise to the level of continuing violations."[58] The Plaintiff contends that she has been subjected to a hostile work environment through isolation, intimidation and harassment since she was transferred to Vital Records. [59] Therefore, at this stage, Plaintiff's hostile work environment claims based on acts occurring prior to March 26, 2015 are not time barred as Plaintiff has sufficiently alleged a continuing violation.

---

[56] *Id.* at 352. (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (citations omitted in original)).
[57] *Id.* (citing *Huckabay*, 142 F.3d at 239).
[58] *Mack v. John L. Wortham & Sons, LP.*, 541 F. App'x 348, 348, 356 (5th Cir. 2013) (citing *Berry v. Bd. Of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)).
[59] R. Doc. 23, at 5.

e. Plaintiff Has Alleged Viable Retaliation Claims

As explained above, Plaintiff may bring her claims for retaliation based on acts that occurred between May 30, 2014 and March 26, 2015. To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action."[60] In the pleadings stage, a plaintiff is not required to establish a prima facie case of discrimination, however, dismissal is appropriate "when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."[61]

1. Plaintiff Alleges She Participated in in a Title VII protected activity

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[62] Plaintiff's amended complaint specifically alleges she filed an EEOC charge and two lawsuits, the first on April 13, 2007 in the Civil District Court for the Parish of Orleans and the second on October 24, 2008 in the Eastern District of Louisiana.[63] Plaintiff previously filed an EEOC charge in January 2008 alleging illegal racial discrimination pursuant to Title VII.[64] As a result, it

---

[60] *Stewart v. Miss. Transp. Com'n,* 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008)).

[61] *See Raj v. Louisiana State University,* 714 F.3d 322, 330 (5th Cir. 2013).

[62] *Ackel v. Nat'l Commc'ns. Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educ. Fund.,* 284 F.3d 642, 657 (5th Cir. 2002)).

[63] R. Doc. 23, ¶ 6.

[64] *See* Case No. 08-4737, R. Doc. 1-1, at 18. Although Plaintiff does not include specific information about the nature of her previous EEOC charge against DHH, Plaintiff does reference the previous charge and the previous lawsuits, by case number, in her Complaint. *See* R. Doc. 23, at 3. As the filings in her previous case are public documents, the Court may rely on information in this EEOC Charge as it is referenced in Plaintiffs Complaint and is also part of the public domain. *See, supra* n.19; *see also, e.g., Funk,* 631 F.3d at 780.

is clear that Plaintiff, through the filing of an EEOC charge and two lawsuits, clearly alleges that she participated in a Title VII protected activity.

    2.  <u>Plaintiff Alleges She Suffered an Adverse Employment Action</u>

In their motion to dismiss, Defendants contend that their actions, as alleged by the Plaintiff, with the exception of her failure to promote claims, do not rise to the level of conduct required by the Supreme Court to constitute retaliation pursuant to Title VII.[65]

For an employment action to constitute prohibited discrimination, the action must be "materially adverse," meaning that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."[66] The Supreme Court established this objective standard "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[67]

In *Stewart*, for example, the Fifth Circuit determined that, as a matter of law, having personal items taken from your desk, having the locks on your office door changed and being chastised by superiors and ostracized by co-workers "do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct."[68] However, employer actions such as demotion, denial of a pay increase, and failure to promote, are materially adverse employment actions.[69] The Fifth Circuit has also noted that the imposition of a heavier workload may constitute an

---

[65] R. Doc. 30-1, at 14.
[66] *See Stewart*, 586 F.3d at 331 (quoting *White*, 548 U.S. at 68).
[67] *Id.*
[68] *Id.* at 332 (quoting *White*, 548 U.S. at 68).
[69] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (collecting cases). *See also, Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

adverse employment action.[70] "Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all circumstances."[71]

Montgomery-Smith contends that Devin George and Nadine Smith, employees of DHH, and Darlene Smith, an independent contractor to DHH, have conspired to retaliate against her by denying her promotions and advancements opportunities, and by intimidating, isolating and harassing her.[72] While the majority of Plaintiff's amended complaint lists actions that do not rise to the level of material adversity, it is apparent that the Plaintiff has alleged she suffered a sufficiently material adverse employment decision when she was denied promotional opportunities on September 10, 2014, October 10, 2014, November 3, 2014, November 5, 2014, November 21, 2014, and February 19, 2015.

The Defendants argue that Plaintiff's October 10, 2014, November 3, 2014 and November 5, 2014 allegations should be disregarded because, although Plaintiff was not promoted to these positions, the positions were either cancelled or never filled.[73]

---

[70] *Stewart*, 586 F.3d at 332.

[71] *White*, 548 U.S. at 71.

[72] R. Doc. 23, at 11.

[73] R. Doc. 30-1, at 19-20. Citing *Rudolph v. Huntington Ingalls, Inc.*, the Defendants argue, "When a desired position is not even filled, much less by someone outside the protected class, a plaintiff is unable to establish a *prima facie* case of discrimination for the alleged failure to promote."[73] *Id.* at 20 (citing *Rudolph v. Huntington Inglass, Inc.*, 2011 WL 4350941 (S.D. Miss. Sept. 15, 2011)). First, unlike Defendants' motion in this case, the court in *Rudolph* was considering a motion for summary judgment. Second, the *prima facie* case requirement is an evidentiary standard and not a pleading requirement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Third, while Defendants' argument may be correct with respect to a claim for discrimination based on alleged failure to promote, the fact that a position was not filled does not mean the failure to promote the Plaintiff was not a materially adverse employment action with respect to a retaliation claim. *See Thompson v. City of Miami Beach, Fla.*, 900 F. Supp. 2d 1335, 1342 (S.D. Fla. 2014).

3. <u>Plaintiff Alleges There is a Causal Connection Between Plaintiff's Alleged Protected Activity and Her Retaliation Claim Based on a Failure to Promote</u>

The Defendants contend that, if this Court were to determine that a materially adverse employment action had occurred, there is still no causal connection between the Plaintiff's alleged protected activity and the fact that she was not promoted. [74] Montgomery-Smith claims that the discriminatory acts against her result from resentment that she was transferred to Vital Records, and contempt for the fact that she filed an EEOC charge, and two lawsuits against DHH. [75] The Plaintiff alleges the Defendants were put on notice of these actions beginning in 2007, and have continued to retaliate and discriminate against her since.[76]

District Courts in the Fifth Circuit have routinely held that attenuated spans of time, including those significantly shorter than the six to seven year period involved in this case, alone, are insufficient to establish a prima facie retaliation claim.[77] However, as the court in *Walls* acknowledged, "Neither the presence nor the absence of temporal proximity is an outcome determinative factor in a Title VII retaliation claim."[78] Stated differently, "The timing of an employer's alleged adverse action can be considered in analyzing the causal link in a retaliation claim, but the timing is not determinative."[79] As the *Walls* court correctly acknowledged, summary judgment, and not a motion to dismiss, is the correct stage to dispose of a plaintiff's retaliation claim on the basis of lack of causal connection due to attenuated spans of time.[80]

---

[74] R. Doc. 30-1, at 19.
[75] R. Doc. 23.
[76] *Id.* at 4.
[77] *See Walls v. Panetta*, 2012 WL 6086516, at *4 (E.D. Tex. Oct. 31, 2012) (collecting cases).
[78] *Id.* (quoting *Sanders v. Sailorman, Inc.*, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012), *aff'd*, 506 F. App'x 303 (5th Cir. 2013)).
[79] *Id.* (citing *Dumas v. Union Pacific R.R. Co.*, 294 F. App'x 822, 827 (5th Cir. 2008)).
[80] *Id.* (Explaining that the cases collected where the plaintiffs' claims were disposed of due to attenuated spans of time were all disposed of on summary judgment.). In this case, a motion for summary judgment

Accordingly, Plaintiff's claims for retaliation based on actions that occurred between May 30, 2014 and March 26, 2015 survive the Defendants' motion to dismiss.

f. Plaintiff's Has Alleged a Viable Retaliatory Hostile Work Environment Claim

Defendants argue the Plaintiff's Amended Complaint does not state a plausible claim against DHH for relief for a hostile work environment under Title VII.[81] To state a typical hostile work environment claim, an employee must show that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on a factor rendered impermissible under Title VII; (4) the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[82] "In this circuit, the fifth element dos not apply when the alleged harasser is a supervisor."[83] In addition, the complained of conduct must be both objectively and subjectively offensive. [84] Plaintiff has not demonstrated she is part of a protected group nor that she was harassed based on a factor rendered impermissible under Title VII. As a result, it is clear that Plaintiff has not alleged a typical Title VII hostile work environment claim based on discrimination.

Instead, based on Plaintiff's complaint and EEOC charge, it appears Plaintiff is instead alleging that she has been subjected to a hostile work environment in retaliation for her EEOC complaints and lawsuits regarding her transfer from the Office of the Bureau of Protective Services to the Office of Public Health. "The Fifth Circuit has neither

---

on Plaintiff's Title VII retaliation claim may be successful, even without additional discovery, because of the extend period of time between Plaintiff's 2007 and 2008 EEOC charges and lawsuits and May 30, 2014.
[81] R. Doc. 30-1, at 22-25.
[82] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).
[83] *McVille v. Inter-Comty. Healthcare, Inc.*, 2011 WL 288962, at *5 (E.D. La. Jan. 25, 2011), *aff'd*, 460 F. App'x 353 (5th Cir. 2012) (citing *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 393 n.2 (5th Cir. 2007); (*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999))
[84] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

recognized nor foreclosed retaliatory hostile work environment claims."[85] "At least five other circuits recognize such a cause of action."[86] "Given the absence of binding authority, courts in the Fifth Circuit have assumed that a retaliatory hostile work environment claim can be brought."[87]

For claims of a retaliatory hostile environment, district courts in this circuit follow a modified approach:

> [T]he first and third elements [of a prima facie case] have a different focus. In the retaliation context, the first element would require proof that the plaintiff had engaged in a protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity.[88]

Viewing the facts in the light most favorable to the Plaintiff, this Court finds that the Plaintiff's allegations that she was subjected to isolation, harassment, and unjustified reprimand are sufficient to state a retaliatory hostile work environment claim for the purposes of a 12(b)(6) analysis.

In order to survive summary judgment, Plaintiff must present evidence creating a fact issue as to "discriminatory intimidation, ridicule, and insult that is sufficiently severe[89] or pervasive to alter the conditions of her "employment" and create an abusive work environment."[90] The Plaintiff must also present evidence which shows that the conditions of her workplace were "both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the

---

[85] *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2017 WL 274133, at *2 (N.D. Tex. Jan. 20, 2017) (citing *Fallon v. Potter*, 277 F. App'x. 422, 424 (5th Cir. 2008)

[86] *Id.* (collecting cases).

[87] *Id.* (citing *Rowe v. Jewell*, 88 F. Supp. 3d 647, 673 (E.D. La. 2015); *Tejada v. Travis Ass'n for the Blind*, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014)).

[88] *Rowe*, 88 F. Supp. 3d at 673 (quoting *Tejada*, 2014 WL 2881450, at *3) (second alteration in original).

[89] *See, e.g., Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000).

[90] *WC&M Enterprises, Inc.*, 496 F.3d at 399 (internal citations omitted).

victim observed it to be so."[91] In determining whether the Plaintiff's work environment was objectively offensive, "[r]elevant factors include '[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance."[92] Although no single factor is determinative, this determination is best made in the context of summary judgment, where the Court has the summary judgment record before it, not the pleadings alone.[93]

Accordingly, the Court finds that Plaintiff's Title VII claim for a retaliatory hostile work environment based on acts occurring prior to March 26, 2015 survives the Defendants' motion to dismiss.

II.     Plaintiff's Age Discrimination Claims

      a.   Plaintiff's Federal Claims Under 29 U.S.C. §621 Against the State

The Defendants contend that the Plaintiff's claims under the Age Discrimination in Employment Act (ADEA) against DHH are barred by Eleventh Amendment sovereign immunity. The Eleventh Amendment serves as a jurisdictional bar depriving federal courts of the jurisdiction to adjudicate claims against a state.[94] Both federal and state law claims are barred from being asserted against a state in a federal court.[95] "Though the language of the Eleventh Amendment does not specifically address suits against the State by its own citizens, the Supreme Court has consistently held that an unconsenting State is immune from suits brought in federal court by her own citizens as well as citizens of

---

[91] *Stewart*, 586 F.3d at 330 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

[92] *Id.* at 330 (quoting *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005)).

[93] *Adams v. McKinney Indep. Sch. Dist.*, 2016 WL 760899 (E.D. Tex. Feb. 26, 2016).

[94] *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).

[95] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21 (1984).

other states."[96] Furthermore, the Eleventh Amendment "extends to actions against state agencies or entities that are classified as 'arms of the state.'"[97] "When a state agency is named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."[98] This rule applies to state agencies such as the Louisiana Department of Health.[99]

The State of Louisiana has not waived its sovereign immunity under the Eleventh Amendment such that it has consented to be sued in federal court. In fact, Louisiana explicitly maintains its sovereign immunity by statute.[100]

The Supreme Court has established that Congress did not have the power to abrogate state sovereign immunity under the ADEA.[101] As a result, Montgomery-Smith's claim under the ADEA against the DHH is barred by Eleventh Amendment sovereign immunity. The Defendants' 12(b)(1) motion to dismiss is granted with respect to Plaintiff's claims against DHH under the ADEA.[102]

---

[96] *Id.* (internal quotation marks omitted) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

[97] *Id.* (citing *Regents of the Univ. of Ca. v. John Doe*, 519 U.S. 425, 429 (1997); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)).

[98] *Valdery*, 2015 WL 5307390, at *1 (citing *Cozzo v. Tangipahoa Parish Counsel-President Gov't*, 279 F.3d 273, 280-81 (5th

[99] *See Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 589 n.20 (E.D. La. 2010) ("The Fifth Circuit has determined that the Department of Health and Hospital's predecessor was an alter ego of the State of Louisiana, and was thus entitled to sovereign immunity." (citing *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987)). As previously explained, pursuant to legislation passed by the Louisiana Legislature in its 2016 regular session, the Louisiana Department of Health and Hospitals is now known as the Louisiana Department of Health.

[100] La. Rev. Stat. § 13:5106 ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). *See also Citrano v. Allen Correctional Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("The State of Louisiana has waived sovereign immunity in tort contract suits but it has not waived its immunity under the Eleventh Amendment from suit in federal court."). *See also* Raj, 714 F.3d 322.

[101] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000).

[102] Plaintiff argues in her opposition that the Supreme Court in *Kimel* only explained that sovereign immunity applies to an ADEA claim against a state employer if the age discrimination is rationally related to a legitimate state interest. *See* R. Doc. 27, at 22. This argument is incorrect. The Supreme Court in *Kimel* clearly explained that Congress did not have the power to abrogate a state's Eleventh Amendment sovereign immunity under the ADEA. *See Kimel*, 528 U.S. at 83.

### b. Plaintiff's Federal Claims Under 29 U.S.C. § 621 Against Other Employees In Their Official Capacities

To the extent Plaintiff's ADEA claims are alleged against Devin George, Nadine Smith and Darlene Smith[103] in their official capacities, these claims are barred by the Eleventh Amendment as well.[104] "It is well established [that] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and that therefore the official-capacity defendants are entitled to invoke sovereign immunity."[105] As a result, the Defendants' 12(b)(1) motion to dismiss Plaintiff's Federal ADEA claims against Devin George, Nadine Smith and Darlene Smith in their official capacities is granted.

### c. Plaintiff's Federal Claims Under 29 U.S.C. § 621 Against Other Employees In Their Individual Capacities

In *Medina v. Ramsey Steel Co.*, the Fifth Circuit explained, "[T]he ADEA 'provides no basis for individual liability for supervisory employees.'"[106] As a result, the Defendants' 12(b)(6) motion to dismiss Plaintiff's Federal ADEA claims against Devin George, Nadine Smith and Darlene Smith[107] in their individual capacities is granted.

---

[103] Based on the facts alleged in Plaintiff's Complaint, it is clear that for part of the time, Darlene Smith was an employee of DHH and part of the time she was hired as a consultant. As the ADEA and alleged state laws provide no individual liability, whether Darlene Smith was acting as an employee or a consultant is of no significance.

[104] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.

[105] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (internal quotations omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

[106] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001) (quoting *Stults v. Conoco, Inc.*, 76 F.3d 651, 655

[107] Based on the facts alleged in Plaintiff's Complaint, it is clear that for part of the time, Darlene Smith was an employee of DHH and part of the time she was hired as a consultant. As the ADEA and alleged state laws provide no individual liability, whether Darlene Smith was acting as an employee or a consultant is of no significance.

### d.   Plaintiff's Age Discrimination Claims Under State Law Against DHH

Plaintiff also alleges a cause of action against her employer, DHH, pursuant to Louisiana Revised Statutes section 23:301 *et seq.*[108] As the Fifth Circuit explained in *Raj*, "sovereign immunity bar[s] federal courts from hearing state law claims brought in federal court against state entities."[109] As explained above, for the purpose of sovereign immunity, DHH, a Louisiana state agency, is considered an "arm of the state" and therefore protected by the Eleventh Amendment.[110] As a result, Defendant's 12(b)(1) motion to dismiss Plaintiff's state law age discrimination claims against DHH is granted.

### e.   Plaintiff's Age Discrimination Claims Under State Law Against Other Employees In Their Official Capacities.

To the extent Plaintiff's state law age discrimination claims are alleged against Devin George, Nadine Smith and Darlene Smith in their official capacities, these claims are barred by the Eleventh Amendment as well.[111] "It is well established [that] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and that therefore the official-capacity defendants are entitled to invoke sovereign immunity."[112] As a result, the Defendants' 12(b)(1) motion to dismiss Plaintiff's state law age discrimination claims against Devin George, Nadine Smith and Darlene Smith in their official capacities is granted.

### f.   Plaintiff's Age Discrimination Claims Under State Law Against Other Employees In Their Individual Capacities

To the extent Plaintiff alleges age discrimination claims under Louisiana state law against Devin George, Nadine Smith and Darlene Smith in their individual capacities,

---

[108] R. Doc. 23, at ¶ 51.
[109] *Raj*, 714 F.3d at 330 (*citing Pennhurst State Sch. & Hosp.*, 465 U.S. at 177).
[110] *See e.g., Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp. 2d at 589 n.20.
[111] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.
[112] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (internal quotations omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Plaintiff has failed to state a claim upon which relief could be granted. In *Dejoie v. Medley*, the Louisiana Supreme Court addressing the issue of who is considered an employer under Louisiana Revised Statutes section 23:301, *et seq.* explained that pursuant to the statute an "employer" means, "[A] person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." [113] As the Louisiana Supreme Court further explained, to be held in violation of the Employment Discrimination Law (EDL), Louisiana Revised Statutes section 23:301, *et seq.*, "one must (1) receive services from an employee *and* in return give compensation to that employee and 2) must meet the requirement of a minimum number of employees."[114] As it is clear from the face of the complaint that Devin George, Nadine Smith and Darlene Smith were not Plaintiff's employer, the Defendants' 12(b)(6) motion to dismiss Plaintiff's state law age discrimination claims against Devin George, Nadine Smith and Darlene Smith in their individual capacities is granted.

III.   Plaintiff's Section 1983 Claims

Plaintiff asserts that the actions and inactions of Devin George and Nadine Smith, in their individual capacities, in conspiring to retaliate, discriminate, intimidate, isolate, deny promotions, and create a hostile work environment against her violate 42 U.S.C. § 1983.[115] Section 1983 provides that any person, who under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in action at law, suit in equity, or other proper proceedings for redress…"[116] Rather than creating substantive rights, Section 1983 simply

---

[113] 9 So. 3d 826, 829 (La. 2009).
[114] *Id.* (emphasis in original).
[115] R. Doc. 23, at ¶ 45.
[116] 42 U.S.C. § 1983.

provides a remedy for the rights that it designates. Section 1983 is generally the appropriate vehicle to enforce rights guaranteed by the Constitution.[117] Section 1983, however, only "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of *state law.*"[118]

 "To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake."[119] "Such a showing, as the court noted in *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987), must be made by reference to state law."[120] "The Constitution does not create property interest; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"[121] "The Louisiana Constitution creates a property interest in public employment at Article 10. Article 10 provides that state employees shall be removed from their jobs only for cause, and provides for quasi-judicial procedures to ensure that employees of the state are not removed from their jobs unfairly, and to ensure that none of them are unfairly treated with regard to promotion and demotion."[122] As the *Vanderwall* court explained, "Clearly, this is enough to create a property right in employment with the state, as it creates a definable and defensible interest in continued employment."[123] "[H]aving found a right, the question for the court becomes whether or not the state provided the plaintiff with a constitutionally adequate opportunity to challenge its actions before depriving the plaintiff of [her] property interest."[124]

---

[117] *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (noting Section 1983 provides a mechanism for enforcing individual rights ensured by federal statutes and the United States Constitution).

[118] *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (emphasis added) (citing 42 U.S.C. § 1983).

[119] *Lollar v. Baker*, 196 F.3d 603, at 607 (5th Cir. 1999).

[120] *Id.*

[121] *Id.* (quoting *Shaper*, 813 F.2d at 713).

[122] *Vanderwall v. Horner*, 635 F. Supp. 688, 694 (E.D. La. 1986) (citing La. Const. art. 10, §§ 5, 8, 10.

[123] *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

[124] *Id.* (citing *Loudermill*, 470 U.S. at 532).

In *Vanderwall*, the court, based on the facts before it, found, "Apparently the state did provide the plaintiff with such an opportunity. From 1978 to the present, the plaintiff has been challenging the employment procedures of DHHR before the Civil Service Commission, and presently has two appeals from the Commission pending in the state courts."[125] The *Vanderwall* held "as a matter of law, these procedures are adequate to protect any interest the plaintiff had in preventing the state from demoting him or failing to promote him," and "although the plaintiff may have been deprived of a right or interest, due process has been satisfied, which is all that the Constitution requires."[126]

In *Wheeler v. King*, a case from within this district, the court, addressing the requirements set forth by the Supreme Court in *Cleveland Board of Education v. Laudermill*, 470 U.S. 532 (1985), explained that the determination of "whether [a plaintiff] was afforded notice and an opportunity for hearing," depends on the nature of the case.[127] In *Wheeler*, the court found the plaintiff "was afforded the type of notice and opportunity to be heard before the Department of Corrections, the Louisiana Civil Service Commission (i.e., Department of Employment Security), and the Louisiana First Circuit Court of Appeals, required by the Fifth and Fourteenth Amendments to the Constitution, as construed by the Supreme Court."[128]

In her Complaint, Plaintiff alleges that Devin George has refused to meet with her to investigate or hold hearings regarding her grievances.[129] However, Plaintiff also alleges she "has filed Civil Service grievances and exhausted all administrative remedies according to DHH and Civil Service."[130] As a matter of law, the Court finds that Plaintiff

---

[125] *Id.*
[126] *Id.* at 694-95.
[127] *Wheeler v. King*, 1991 WL 195488, at *4 (E.D. La. Sept. 20, 1991).
[128] *Id.* (citing *Loudermill*, 105 S.Ct. at 1494-96).
[129] R. Doc. 23, at ¶23.
[130] *Id.* at ¶28.

was afforded the Due Process protections afforded by the Constitution and as a result, the Defendants' 12(b)(6) motion to dismiss her § 1983 claims against Devin George and Nadine Smith in their individual capacities is granted.

With respect to Plaintiff's alleged Section 1983 claim pursuant to Louisiana Revised Statutes section 9:2798.1, a review of this statute shows that the statute is a "discretionary immunity statute"[131] and does not provide a cause of action for plaintiffs. As a result, Defendants' motion to dismiss Plaintiff's Section 1983 claim made under Louisiana Revised Statutes section 9:2798.1 is granted.

IV.     Plaintiff's State Law Claim Under La. R.S. 51:2256

In her fifth cause of action, Plaintiff alleges claims pursuant to Louisiana Revised Statutes section 51:2256 which makes it unlawful for an employer to:

> [R]etaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.[132]

For the same reasons as explained in the section regarding Plaintiff's claims against the State under the ADEA, Plaintiff's state law claims against her employer for Louisiana Revised Statutes section 51:2256 are barred by Eleventh Amendment sovereign immunity.[133] To the extent Plaintiff's state law claim under this statute is alleged against Devin George, Nadine Smith and Darlene Smith in their official capacities, these claims are barred by the Eleventh Amendment as well.[134]

---

[131] *See, e.g. Anderson v. Bossier Par. Police Jury*, 49,471 (La. App. 2 Cir. 11/19/14), 153 So. 3d 550, 555, *writ denied*, 2014-2664 (La. 3/13/15), 161 So. 3d 640.

[132] La. Rev. Stat. 51:2256

[133] *See Sartin v. Seven Acres*, 2003 WL 1790847, at *3 (E.D. La. Apr. 2, 2003) (holding that La

[134] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.

To the extent Plaintiff alleges claims pursuant to Louisiana Revised Statutes section 51:226 against Devin George, Nadine Smith and Darlene Smith in their individual capacities, the Court finds the Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6). As explained in *Smith v. Parish of Washington*, it is clear "that as a matter of law, § 51:2256 no longer applies to unlawful discrimination."[135] Instead, liability under Louisiana Revised Statutes section 51:2256 "is limited to retaliation against practices made unlawful under the Louisiana Human Rights Act and does not extend to provisions repealed from that Act and now incorporated into La. R.S. § 23:302."[136] Further, under Louisiana Revised Statutes section 51:2256, co-employees, officers and directors of the employer are not subject to liability because they are not considered "employers" under the statute.[137]

Accordingly, Defendants' 12(b)(1) motion to dismiss Plaintiff's state law claims under Louisiana Revised Statutes section 51:2256 is granted.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss[138] is **GRANTED IN PART** and **DENIED IN PART**.

---

[135] 318 F. Supp. 2d 366, 373 (E.D. La. 2004).

[136] *Id.* (citing *Hollister v. Gallagher*, 2004 WL 224547 (E.D. La. 2003); *Anderson v. Guste Homes*, 2004 WL 224567 (E.D. La. 2004); *Johnson v. Integrated Health Services, Inc.*, 2002 WL 31246762 (E.D. La. 2002)). The amended Louisiana Human Rights Act makes unlawful discriminatory practices in public accommodations and advertising public accommodations, against breast-feeding mothers, by financial institutions in providing financial services and in credit transactions. *See Smith v. Parish of Washington*, 318 F. Supp. 2d 366, 371 n.3 (E.D. La. 2004) (citing La. R.S. §§ 51:2247, 51:2248, 51:2247.1, 51:2254 and 51:2255).

[137] *See Seal v. Gateway Companies, Inc.*, 2002 WL 10456, at *6 (E.D. La. Jan. 3, 2002) ("Louisiana's Employment Discrimination Law and the LHRA permit suits only against 'employers,' which are defined as persons receiving services from an employee *and, in return, giving compensation* of any kind to an employee") (emphasis in original) (internal quotations and citations omitted).

[138] R. Doc. 30.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Title VII Retaliation and Hostile Work Environment claims against DHH based on Eleventh Amendment sovereign immunity is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Title VII Retaliation and Hostile Work Environment claims against Defendants Devin George, Nadine Smith and Darlene Smith in their official and individual capacities is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Title VII Retaliation and Hostile Work Environment claims against DHH is **GRANTED IN PART** and **DENIED IN PART** as set forth above. Title VII claims Plaintiff may bring in this Court at this time are: (1) Plaintiff's Title VII Retaliation claims against DHH based on acts occurring between May 30, 2014 and March 26, 2015; (2) Plaintiff's Title VII Hostile Work Environment claim against DHH based on acts occurring prior to March 26, 2015. All other Title VII claims against DHH based on acts occurring prior to May 30, 2014 are hereby **DISMISSED WITH PREJUDICE**. All other Title VII claims against DHH based on acts occurring after March 26, 2015 are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's federal age discrimination claims under 29 U.S.C. § 621 against DHH and Defendants Devin George, Nadine Smith and Darlene Smith in their official capacities is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's federal age discrimination claims under 29 U.S.C. § 621 against Defendants Devin George, Nadine Smith and Darlene Smith in their individual capacities is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's age discrimination claims under Louisiana state law against DHH and Defendants Devin George, Nadine Smith and Darlene Smith in their official capacities is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's age discrimination claims under Louisiana state law against Defendants Devin George, Nadine Smith and Darlene Smith in their individual capacities is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Section 1983 Claims against Devin George and Nadine Smith in their individual capacities is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's claims under Louisiana Revised Statutes section 51:2256 against DHH and Defendants Devin George, Nadine Smith and Darlene Smith in their official capacities is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's claims under Louisiana Revised Statutes section 51:2256 against Defendants Devin George, Nadine Smith and Darlene Smith in their individual, capacities is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**New Orleans, Louisiana, this 21st day of February, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**