| | |
|---|---|
| **DENEEN L. MONTGOMERY-SMITH,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6369** |
| **LOUISIANA DEPARTMENT OF** **HEALTH AND HOSPITALS, ET AL.,** **Defendants** | **SECTION: "E"(3)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant, The State of Louisiana, through its Department of Health and Hospitals ("DHH").[1] Plaintiff filed an objection to the DHH's Motion for Summary Judgment.[2] For the following reasons, DHH's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

I.    Procedural Background

On November 30, 2015, Plaintiff Deneen L. Montgomery-Smith filed a complaint against Defendants, The State of Louisiana, through its Department of Health and Hospitals ("DHH") Office of Public Health-Louisiana Center for Records and Statistics, and against Devin George, Nadine Smith, and Darlene Warren-Smith in their individual and official capacities. On April 25, 2016, the Court issued an Order denying Defendants' motion to dismiss without prejudice, granting Plaintiff leave to amend her complaint, and allowing Defendants the opportunity to re-urge their motion upon the filing of Plaintiff's amended complaint. On May 9, 2016, Plaintiff filed a First Supplemental and Amended Restated Complaint. On June 15, 2016, Defendants filed their re-urged Rule 12(b)(1) and

---

[1] R. Doc. 55.
[2] R. Doc. 61.

12(b)(6) Motion to Dismiss.[3] On February 21, 2017, the Court issued its Order and Reasons granting in part and denying in part Defendants' motion to dismiss.[4] In its Order and Reasons the Court dismissed with prejudice all claims made by Plaintiff with the exception of (1) her Title VII Retaliation claims against DHH based on acts occurring between May 30, 2014 and March 26, 2015 and (2) Plaintiff's Title VII Retaliatory Hostile Work Environment claim against DHH based on acts occurring prior to March 26, 2015.[5]

On March 21, 2017, DHH filed its Motion for Summary Judgment[6] regarding Plaintiff's remaining Title VII Claims. On March 30, 2017, Plaintiff filed her Response in Opposition[7] to DHH's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "An issue is material if its resolution could affect the outcome of the action."[9] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[10] All reasonable inferences are drawn in favor of the nonmoving party.[11] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[3] R. Doc. 30.
[4] R. Doc. 45.
[5] *Id.* at 32.
[6] R. Doc. 55.
[7] R. Doc. 61.
[8] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[9] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[10] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[11] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[12]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[13] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[14]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[15] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled

---

[12] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[13] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[14] *Celotex*, 477 U.S. at 322–24.

[15] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

to summary judgment as a matter of law.[16] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[17] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[18] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[19] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[20]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[21]

---

[16] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[17] *Celotex*, 477 U.S. at 332–33.
[18] *Id.*
[19] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[20] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[21] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

# LAW AND ANALYSIS

DHH filed a Motion for Summary judgment seeking dismissal of Plaintiff's remaining Title VII claims for (1) retaliation through acts occurring between May 30, 2014 and March 26, 2015 and (2) subjection to a retaliatory hostile work environment for actions occuring prior to March 26, 2015.[22]

## I. Plaintiff's Claims for Retaliatory Acts Occurring Between May 30, 2014 and March 26, 2015

Title VII retaliation claims are analyzed under a modified *McDonnell Douglas* burden-shifting approach.[23] Under this approach, if the plaintiff demonstrates a *prima facie* case of retaliation, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision not to promote the plaintiff.[24] If such a showing is made, the burden shifts back to the plaintiff to establish that the employer's proffered reason is a "pretext for the actual retaliatory reason."[25]

### a. Plaintiff's *Prima Facie* Case of Retaliation

Title VII "forbids retaliation by employers against employees who report workplace race or gender discrimination."[26] To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action."[27]

---

[22] R. Doc. 55.
[23] *See, e.g., Richardson v. Monitronics International*, 434 F.3d 327, 332–33 (5th Cir. 2005).
[24] *See, e.g., McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)).
[25] *Id.*
[26] *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 273 (2009).
[27] *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

### i. Plaintiff Participated in a Protected Activity

It is uncontested that Plaintiff participated in a Title VII protected activity when she filed an EEOC charge and two lawsuits in 2007 and 2008.[28]

### ii. Whether Plaintiff has Suffered an Adverse Employment Action

With respect to whether Plaintiff has suffered an adverse employment action by her employer, for an employment action to constitute prohibited discrimination, the action must be "materially adverse," meaning that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."[29] The Supreme Court established this objective standard "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[30]

In *Stewart*, for example, the Fifth Circuit determined that, as a matter of law, having personal items taken from your desk, having the locks on your office door changed and being chastised by superiors and ostracized by co-workers "do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct."[31] However, employer actions such as demotion, denial of a pay increase, and failure to promote, are materially adverse employment actions.[32] The Fifth Circuit has also noted that the imposition of a heavier workload may constitute an

---

[28] R. Docs. 55-1 at 10, 61 at 11. As discussed further below, Plaintiff's filing of an EEOC charge on March 26, 2015, for the purposes of Plaintiff's retaliation claims, is not considered a relevant Title VII protected activity because the March 26, 2015 charge itself relates to her complaint of alleged retaliatory actions that occurred prior to that date.

[29] *See Stewart*, 586 F.3d at 331 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[30] *Id.*

[31] *Id.* at 332 (quoting *White*, 548 U.S. at 68).

[32] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (collecting cases). *See also*, *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

adverse employment action.[33] "Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all circumstances."[34]

DHH argues Plaintiff's retaliation claims related to her allegations of poor treatment, isolation, and intimidation do not constitute adverse employment actions as a matter of law.[35] In its February 21, 2017 Order and Reasons the Court explained:

> Montgomery-Smith contends that Devin George and Nadine Smith, employees of DHH, and Darlene Smith, an independent contractor to DHH, have conspired to retaliate against her by denying her promotions and advancements opportunities, and by intimidating, isolating and harassing her. While the majority of Plaintiff's amended complaint lists actions that do not rise to the level of material adversity, it is apparent that the Plaintiff has alleged she suffered a sufficiently material adverse employment decision when she was denied promotional opportunities on September 10, 2014, October 10, 2014, November 3, 2014, November 5, 2014, November 21, 2014, and February 19, 2015.[36]

The Court now clarifies its February 21, 2017 Order and Reasons to explain that Plaintiff's only cognizable claims for impermissible retaliation relate to denial of the following five promotional opportunities after May 30, 2014 and before March 26, 2015 because these are the denials that rise to the level of material adverse employment actions: (1) Program Manager 1-B-DHH (August 12 and August 26, 2014); (2) Program Manager 1-A-DHH (August 12, 2014); (3) Program Monitor Supervisor (August 28, 2014); (4) Program Monitor Supervisor (February 18, 2015); and (5) Program Monitor (February 18, 2015).

---

[33] *Stewart*, 586 F.3d at 332.
[34] *White*, 548 U.S. at 71.
[35] R. Doc. 55-1 at 11.
[36] R. Doc. 45 at 19 (internal citations omitted).

### iii. Whether Plaintiff Can Demonstrate a Causal Connection Between Her Protected Action and the Adverse Employment Actions

As a threshold matter, all of the adverse employment actions that are the bases of Plaintiff's retaliation claims occurred *prior* to the filing of her March 26, 2015 EEOC Complaint. Accordingly, it is clear that DHH's alleged retaliation at issue in this case was not in response to Plaintiff's March 26, 2015 EEOC Complaint. As a result, the only protected activities relevant to the Plaintiff's *prima facie* case are Plaintiff's 2007 and 2008 lawsuits against DHH.[37]

In *University of Texas South Western Medical Center v. Nassar*, the Supreme Court held that Title VII retaliation claims must be proved according to traditional principles of but-for causation.[38] "This heightened standard 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"[39]

There is some disagreement, however, "among the circuits regarding whether the Supreme Court's holding in [*Nassar*] requires a plaintiff to show but-for causation as part of her prima facie case of retaliation, or only at the third step of the *McDonnell Douglas* framework to rebut an employer's legitimate stated reason for the adverse employment action."[40] In *Smith v. Board of Supervisors of Southern University*, the Fifth Circuit declined to resolve this issue after reasoning that even applying the standard most favorable to the plaintiff, the plaintiff still failed to meet her burden.[41] This Court also

---

[37] These claims were settled in November 2011.

[38] *See Hernandez v. Metro. Transit Auth. of Harris Cty.*, 2016 WL 7404749, at \*4 (5th Cir. Dec. 21, 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---- U.S. ----, 133 S.Ct. 2517, 2533 (2013).

[39] *Id.* (quoting *Nassar*, 133 S.Ct. at 2533).

[40] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 33 n.4 (5th Cir. 2016) (citing *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 97 & n.12 (3d Cir. 2016). *See also, Hernandez v. Metro. Transit Auth. of Harris Cty.*, 2016 WL 7404749 at \*4 n.6; *Smith v. Florida Pars. Juvenile Justice Comm'n*, 2017 WL 1177905, at \*9 (E.D. La. Mar. 30, 2017).

[41] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 33 n.4.

declines to resolve this issue as Plaintiff's retaliation claims survive regardless of whether the Plaintiff is required to make a showing of but-for causation in her *prima facie* case or at step three of the *McDonnell Douglas* framework.

In cases with "[c]lose timing between an employee's protected activity and an adverse action against [her]," a plaintiff may satisfy the causation requirement of her *prima facie* case through the evidence of close proximity alone.[42] In *Clark County School District v. Breeden*, the Supreme Court held that actions taken twenty months after a plaintiff exercised a protected activity, "suggests, by itself, no causality at all."[43] Stated differently, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case."[44] Because Plaintiff's protected activities were initiated six to seven years before the complained of adverse employment actions, Plaintiff is not entitled to the benefit of an inference of causation based on close proximity alone.[45] She must bring forth additional evidence of causation.

Plaintiff has put forth evidence demonstrating a genuine issue of material fact exists as to whether DHH's failure to promote her was in retaliation for her filing of lawsuits in 2007 and 2008. It is uncontested that Hugh Ely was the Assistant Secretary of DHH at all times relevant to this lawsuit.[46] Plaintiff, in her deposition, states that Hugh Ely told her she "would never receive[] a promotion after having filed lawsuits and

---

[42] *See, e.g., Barnes v. McHugh*, 2013 WL 3561679, at *16 (E.D. La. July 11, 2013).

[43] 532 U.S. 268, 274 (2001).

[44] *See, e.g., Roberson v. Alltel Info. Serv.*, 373 F.3d 647, 656 (5th Cir. 2004) (quoting *Swanson v. Gen Servs. Admin*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997) (emphasis in original).

[45] *See, e.g., El-Saba v. Univ. of S. Alabama*, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) "If there is a substantial delay between the protected expression and the adverse action, a complaint of retaliation fails as a matter of law only **in the absence of other evidence tending to show causation** ..." (emphasis in original) (internal quotations omitted).

[46] R. Docs. 55-2 at 4, 61-1 at 9.

grievances."[47] While a plaintiff's "[s]ubjective belief[], no matter how sincere, simply cannot support a finding" that a defendant's actions were retaliatory in violation of Title VII,[48] the Fifth Circuit in *Portis v. First National Bank of New Albany, Mississippi*, "explicitly rejected the argument that the plaintiff's testimony regarding the employer's discriminatory statements was merely testimony 'regarding [the plaintiff's] subjective belief.'"[49] In *Portis*, the Fifth Circuit, reviewing the district court's granting of the defendant's motion for judgment as a matter of law, explained that, "the question is not whether the plaintiff's testimony on its own can satisfy the burden of persuasion, but whether it is enough to establish intentional discrimination. In this context, the Plaintiff's uncorroborated testimony 'is sufficient to cast on the defendant the burden of producing admissible evidence [of nondiscriminatory motivation].'"[50] The Fifth Circuit further explained, "The fact that Portis' case-in-chief consists solely of her own testimony does not prevent her from establishing intentional discrimination."[51]

Plaintiff argues her testimony that Mr. Ely told her she would never be promoted because she had filed two actions creates a genuine issue of material fact as to whether she was retaliated against. Two of the positions for which she applied, her initial application for Program Manager 1-A-DHH and her initial application for Project Manager 1-B-DHH in August 2014, were for positions "belonging to" Mr. Ely, in other words, under his control.[52] When asked why the 1-A-DHH position was cancelled, Tyrin Fultz, a Human Resources Specialist at DHH, stated the position was cancelled after

---

[47] R. Doc. 55-4 at 57.
[48] *See Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x at 34.
[49] *See Fierros v. Texas Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (quoting *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994) (alteration in original)).
[50] *Portis*, 34 F.3d at 329 n.10 (alteration in original) (citations omitted).
[51] *Id.*
[52] R. Doc. 61-1 at 4-5.

receiving a directive from an unknown person and that he was not provided a reason as to why this position was cancelled.[53] Further, with respect to the same position, Plaintiff put forth evidence demonstrating that, although the position was cancelled, another employee, Robin Lewis, was later "detailed" into the position.[54] In his deposition, Devin George explained that an employee is "detailed" into a position when he or she does not "meet the minimum civil service qualifications" of a position.[55] With respect to the 1-B-DHH position, although the position was initially cancelled, the position was later reopened on or about August 26, 2014.[56] Defendant has not put forth any explanation of why the position was originally cancelled.[57] After the position was reopened on or about August 26, 2014, Plaintiff re-applied and although she was listed as a qualified applicant, she was ultimately not chosen for the position.[58] The Defendant has not provided any explanation of why the Plaintiff was not chosen for this position. Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that Plaintiff has established a *prima facie* case. Plaintiff has put forth sufficient evidence to demonstrate a question of material fact exists as to whether a causal connection exists between her protected activity and the denial of her promotions to the Project Manager 1-A-DHH and 1-B-DHH Positions.

The alleged statements made by Mr. Ely also are sufficient to create a genuine issue of material fact as to whether the denial of Plaintiff's three other applications for promotions were a result of her protected activity. Unlike the positions advertised by Mr.

---

[53] R. Doc. 61-8 at 13-14.
[54] R. Doc. 55-5 at 164.
[55] *Id.*
[56] *See* R. Docs. 55-2 at 3, 66-1 at 3.
[57] *Id.* Defendant merely states that the position was cancelled. R. Doc. 55-2 at 3. In his deposition, Devin George states that he has no information as to why this position was cancelled. R. Doc. 55-5 at 95.
[58] *See* R. Doc. 61-8 at 12-22.

Ely, in order to demonstrate a causal link between Mr. Ely's statements regarding the likelihood of Plaintiff's chances of promotion, and the denials of her promotion to positions not directly under his control, Plaintiff will need to show that the ultimate decision maker regarding the other positions was somehow influenced by Mr. Ely's retaliatory animus. "[U]nder the cats' paw theory of liability, a plaintiff can establish an employer's liability where another employee with retaliatory animus influenced an actual decision maker to take retaliatory or discriminatory action against the plaintiff." [59] Plaintiff has put forth evidence that Devin George is the ultimate hiring authority for the Office of Public Health-Vital Records. [60] Plaintiff has also put forth evidence that Devin George has reprimanded her in the past after receiving an order from Baton Rouge. [61] When pressed on who issued the order from Baton Rouge, Devin George stated he did not know. [62] Plaintiff has not provided evidence demonstrating a connection between Mr. Ely's statement's and Mr. George's actions, but viewing the evidence in a light most favorable to the Plaintiff, Plaintiff has sufficiently demonstrated the existence of a genuine issue of material fact as to whether Mr. Ely is the person who influenced Mr. George. Defendants have not put forward any evidence negating this inference. Viewed as a whole in light of the numerous denials for promotion, the Court finds that Plaintiff has met her burden in establishing a *prima facie* case with respect to her claims for retaliation.

    b.   <u>DHH's Non-Retaliatory Reason for Denying Plaintiff's Applications</u>

After a plaintiff has established his or her *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence the existence of a legitimate non-

---

[59] *Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 2016 WL 1089266, at *4 (M.D. La. Mar. 18, 2016) (citing *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015)).
[60] R. Doc. 55-5 at 132.
[61] *Id.* at 197.
[62] *Id.*

retaliatory reason for its employment actions.[63] The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'"[64] "To meet this burden, the employer must show, through admissible evidence, a legally sufficient reason for not hiring the plaintiff."[65] The Fifth Circuit has stated, however, that in order "to meet its burden of production under *McDonnel Douglas,* an employer must articulate a nondiscriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual."[66] "This does not mean that an employer may not rely on subjective reasons for its personnel decisions. It does mean, though, that to rebut an employee's *prima facie* case, a defendant employer must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee."[67]

Defendant has satisfied its burden in demonstrating a permissible, non-retaliatory reason for only one of the promotions for which Plaintiff was denied a promotion: the Program Monitor Supervisor Position that Plaintiff applied for on February 18, 2015. As explained in Mr. George's deposition, Jemimah Mikel was chosen for this position after the Louisiana Civil Service performed a restructuring to establish the Quality Management Unit ("QMU") and notified Mr. George that three Field Service Manager positions, including Ms. Mikel's, were being abolished and would be reallocated to QMU.[68] Defendant states the Civil Service mandated that its policies required the Program Monitor Supervisor position be publically announced and that Ms. Mickel be

---

[63] *See McCoy*, 492 F.3d at 557.
[64] *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).
[65] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 202 (5th Cir. 2008) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).
[66] *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004) (emphasis in original) (citations omitted).
[67] *Id.* (citations omitted).
[68] R. Doc. 55-1 at 15 (citations omitted).

placed into the newly created position.[69] With respect to the denial of Plaintiff's February 18, 2015 application for the Program Monitor Supervisor Position, the Court finds the Defendant has met its burden in stating a non-retaliatory reason for the denial of Plaintiff's application.

Defendant's explanations with respect to the other job applications at issue, however, do not satisfy the low evidentiary threshold set forth in *Burdine*. With respect to the positions filled by Charlotte Sykes and Melissa Root, positions for which Plaintiff respectively applied for on August 26, 2014 and August 28, 2014, DHH merely states that all qualified candidates were asked the same questions and the interview panel discussed the strengths and weaknesses of each candidate before arriving at a final decision "as a result of this non-discriminatory process."[70] Although *Burdine* may not require much, it is clear that a Defendant must provide "enough detail to enable [a plaintiff] to attempt to show pretext."[71]

With respect to Plaintiff's August 12, 2014 applications for the Program Manager 1-A-DHH position and her original application for the Program Manager 1-B-DHH position, applications for which the posted positions were later cancelled, Defendant argues, "When a desired position is not filled or cancelled, a plaintiff is unable to establish a prima facie case of discrimination for alleged failures to promote."[72] The Court previously addressed and rejected this argument when it ruled on Defendants' Motion to Dismiss. In its February 21, 2017 Order and Reasons, addressing an identical argument, the Court explained, "[W]hile Defendants' argument may be correct with respect to a

---

[69] *Id.*
[70] *Id.*
[71] *Patrick*, 394 F.3d at 317.
[72] R. Doc. 55-1 at 16 (citing *Rudolph v. Huntington Ingalls, Inc.*, 2011 WL 4350941 (S.D. Miss. Sept. 15, 2011).

claim for discrimination based on alleged failure to promote, the fact that a position was not filled does not mean the failure to promote the Plaintiff was not a materially adverse employment action with respect to a retaliation claim." [73] The Defendant argues the depositions provided to the Court contain further detail regarding DHH's reasons to not promote Plaintiff, but DHH has failed to provide the Court with specific citations as to the location of this information in the almost six hundred pages of depositions provided to the Court. The Court has no duty to sift through the record in search of evidence to support a party's position in a motion for summary judgment and conclusory assertions and arguments of counsel are not enough to satisfy the Defendant's burden. [74] Accordingly, the Court finds the Defendant has not satisfied its burden to put forward a non-retaliatory reason for its employment actions with respect to the positions under Mr. Ely which were posted and cancelled after Plaintiff submitted her application.

With the exception of Defendant's proffered non-retaliatory reason for denying Plaintiff's February 18, 2015 Program Supervisor Position, the Defendant has not satisfied its burden pursuant to *Burdine*. Because the Defendant, with the exception of Plaintiff's claim related to her February 18, 2015 application, has not satisfied its burden at step two of the *McDonnel Douglas* framework, Defendant's motion for summary judgment as to the Plaintiff's retaliation claims, other than Plaintiff's claim based on the February 18, 2015 Program Supervisor application, is denied.

c. Pretext

With respect to Plaintiff's February 18, 2015 application for the Program Supervisor Position, for which the Defendant has articulated a sufficient non-retaliatory

---

[73] R. Doc. 45 at 19 n.73 (citing *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1342 (S.D. Fla. 2014).

[74] *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010) (citations omitted).

reason for denying, and assuming *arguendo* that DHH has satisfied its burden in the second step of the *McDonnell Douglas* framework with respect to the Plaintiff's four other applications at issue, the third step of the *McDonnell Douglas* requires the Plaintiff to demonstrate that DHH's proffered non-retaliatory reasons are merely pretext for the actual retaliatory reason. Although, as discussed above, it is unclear whether the *Nassar* but-for causation is a part of a plaintiff's *prima facie* case of retaliation, it is clear that a plaintiff must show but for causation to satisfy the third step of the *McDonnell Douglas* framework by proving her protected activity was the but-for cause of the adverse employment action.[75] As discussed above, Plaintiff has put forth evidence that Mr. Ely told her she would never be promoted because of her 2007 and 2008 lawsuits. This evidence demonstrates that questions of material fact exist as to (1) whether, as the Court previously explained, a causal connection exists between her protected activities and the denial of her promotions and (2) whether DHH's proffered non-retaliatory reasons for denying her application are merely pretext. DHH's motion for summary judgment with respect to Plaintiff's retaliation claims is denied.

II.    Plaintiff's Retaliatory Hostile Work Environment Claim

A hostile work environment results from discrimination that does *not* culminate in a tangible or adverse employment action.[76] A hostile work environment:

> Involves repeated conducted ... [that] occur over a series of days or perhaps years and ... [where] a single act of harassment may not be actionable on its own, [while] a discrete-acts claim involves a single act of discrimination such as termination, failure to promote, denial of transfer, or refusal to hire. [A] plaintiff may not combine discrete acts to form a hostile work

---

[75] The Supreme Court held that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened motivation causation test. *See Hernandez*, 2016 WL 7404749 at *4 (quoting *Nassar*, 133 S.Ct. at 2533).

[76] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998).

environment claim without meeting the required hostile work environment.[77]

"A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[78]

As the Court explained in its February 21, 2017 Order and Reasons, Plaintiff's hostile work environment claim differs from the typical hostile work environment claim because Plaintiff's claim is based on claims that the Defendant created and permitted a hostile work environment in retaliation for her protected activities as opposed to discrimination against a protected group under Title VII.[79] "The Fifth Circuit has neither recognized nor foreclosed retaliatory hostile work environment claims."[80] "At least five other circuits recognize such a cause of action."[81] "Given the absence of binding authority, courts in the Fifth Circuit have assumed that a retaliatory hostile work environment claim can be brought."[82]

To state a typical, non-retaliatory, hostile work environment claim, an employee must show that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on a factor rendered impermissible under Title VII; (4) the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[83] "In this circuit,

---

[77] *Rowe v. Jewell*, 88 F. Supp. 3d 647, 674 (E.D. La. 2015) (alterations in original) (internal quotations and citations omitted).

[78] *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quotations omitted).

[79] *See* R. Doc. 45.

[80] *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2017 WL 274133, at *2 (N.D. Tex. Jan. 20, 2017) (citing *Fallon v. Potter*, 277 F. App'x. 422, 424 (5th Cir. 2008)).

[81] *Id.* (collecting cases).

[82] *Id.* (citing *Rowe*, 88 F. Supp. 3d at 673; *Tejada v. Travis Ass'n for the Blind*, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014)).

[83] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).

the fifth element does not apply when the alleged harasser is a supervisor."[84] In addition, the complained of conduct must be both objectively and subjectively offensive.[85]

For claims of a retaliatory hostile environment, district courts in this circuit follow a modified approach:

> [T]he first and third elements [of a prima facie case] have a different focus. In the retaliation context, the first element would require proof that the plaintiff had engaged in a protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity.[86]

### a. Plaintiff Engaged in a Protected Activity

With respect to Plaintiff's Retaliatory Hostile Work Environment claim, it is uncontested that Plaintiff participated in a Title VII protected activity when she filed an EEOC charge and two lawsuits in 2007 and 2008.[87]

### b. Plaintiff Was Subjected to Unwelcome Harassment

DHH, in its motion, does not specifically argue that the Plaintiff cannot establish the second element of her retaliatory hostile work environment *prima facie* case. For the purpose of establishing the second element of her retaliatory hostile work environment *prima facie* case, the Court finds that Plaintiff has put forth sufficient evidence to demonstrate the existence of a genuine issue of material fact as to whether she was subjected to unwelcome harassment.

---

[84] *Mcville v. Inter-Comty. Healthcare, Inc.*, 2011 WL 288962, at *5 (E.D. La. Jan. 25, 2011), *aff'd*, 460 F. App'x 353 (5th Cir. 2012) (citing *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 393 n.2 (5th Cir. 2007); (*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999))

[85] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

[86] *Rowe*, 88 F. Supp. 3d at 673 (quoting *Tejada*, 2014 WL 2881450, at *3) (second alteration in original).

[87] R. Docs. 55-1 at 10, 61 at 11. As explained in the Court's February 21, 2017 Order and Reasons, Plaintiff's March 26, 2015 EEOC charge, for the purpose of Plaintiff's retaliatory hostile work environment claims, is not considered a relevant Title VII protected activity because the retaliatory hostile work environment complained of occurred prior to the filing of this charge and in retaliation to her 2007 and 2008 lawsuits. *See* R. Doc. 45 at 32 (dismissing Plaintiff's claims related to a hostile work environment after March 26, 2015).

c. <u>Whether Plaintiff Can Demonstrate a Causal Connection Between Her Protected Action and the Unwelcomed Harassment</u>

As described above, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test[.]"[88] "This heightened standard 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"[89] In dealing with retaliatory hostile work environment claims in other cases, courts within this district have determined "but-for causation, which is the third, pretext element of a retaliation claim, still 'matters in a retaliatory hostile work environment claim – that is the severe and pervasive accumulation of actions that would not have occurred but-for the retaliatory reason, even if each action alone was justifiable."[90]

Plaintiff has sufficiently demonstrated that a factual dispute exists as to whether the unwelcome harassment was directly in retaliation for her protected activities. With respect to her isolation, Plaintiff, in her deposition, stated that Jemimah Mickel told her that she was instructed to stay away from the Plaintiff because of lawsuits and grievances that were filed in the past.[91] Although Plaintiff concedes that Ms. Mickel, in her deposition, denied this conversation,[92] Plaintiff argues "these denials also create an issue of material fact to be decided by a jury.[93] The Court agrees, especially in light of Erica Franklin's testimony corroborating Plaintiff's assertion that she and Ms. Mickel used to be friendly but Ms. Mickel then suddenly distanced herself.[94]

---

[88] *Hernandez*, 2016 WL 7404749 at *4 (quoting *Nassar*, 133 S.Ct. at 2533 (alterations in original)).
[89] *Id.* (quoting *Nassar*, 133 S.Ct. at 2533).
[90] *Rowe*, 88 F. Supp. 3d at 674 (citing *Gowski v. Peake*, 682 F.3d 1299, 1313 (5th Cir. 2015)).
[91] R. Doc. 61-3 at 12.
[92] *See* R. Doc. 61-12 at 5.
[93] R. Doc. 61-1 at 13.
[94] R. Doc. 61-13 at 11-13.

Plaintiff also argues that Mr. George has refused to meet with her to discuss why she was not promoted. Specifically, Plaintiff testified that Devin George stated he needed someone from Baton Rouge, namely Beth Skalko, to be present in the meeting. [95] Plaintiff has also stated that to date, Mr. George, has never met with the Plaintiff.[96] Defendant has not provided any evidence as to why Mr. George required that Ms. Skalko be present and why this meeting has never occurred. Finally, as discussed in greater detail below, Plaintiff has provided evidence demonstrating a genuine issue of material fact as to whether she has been routinely excluded from office meetings. [97] Considering the foregoing, and in light of the factual disputes discussed above relating to whether Plaintiff can demonstrate a causal connection between her protected activities and the denial of her promotions, the Court finds this evidence raises a genuine issue of material fact as to whether Plaintiff can demonstrate that the complained of harassment was in retaliation for her protected activities.

### d. Whether the Harassment was Sufficiently Severe or Pervasive So As to Affect a Term, Condition, or Privilege of Employment

DHH argues that Plaintiff has failed to establish that a factual disputes exists as to whether the work environment complained of was sufficiently severe or pervasive so as to affect a term, condition, or privilege of employment. "Title VII ... is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges in the 'terms and conditions of employment.'" [98] The Fifth Circuit has further explained:

> For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim

---

[95] R. Doc. 61-3 at 14-15.
[96] *Id.*
[97] *See* R. Doc. 61-3 at 33.
[98] *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (quotations omitted).

perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative. In short, a showing that the employee's job performance suffered is simply a factor to be considered, not a prerequisite.[99]

"[T]he determination of whether alleged conduct is sufficiently severe or pervasive is not an exact science, but this [c]ourt's decisions on this issue provide guidance."[100]

As discussed above, Plaintiff, in her deposition, stated that after her involuntary transfer to Vital Records, she was formally reprimanded by Devin George for asking Brenda Hurst, instead of her immediate supervisor, Nadine Smith, for a job description.[101] As also discussed above, Plaintiff stated that Devin George refused to meet with her to discuss Ms. Sykes' promotion "unless someone from Baton Rouge, namely Beth Skalko, was present."[102] Plaintiff stated that even though she followed up with an e-mail to Mr. George requesting a time to discuss, a meeting never occurred.[103] Plaintiff also stated that she "was isolated in the office," and "[n]o one was allowed to talk to me or spend time in my office with me."[104] Plaintiff also stated she was not assigned to any specific duties and was not allowed to speak with anyone other than her immediate supervisor.[105] Further, Plaintiff stated that Jemimah Mickel received a promotion after she stopped associating with Plaintiff.[106] Plaintiff also testified she has not been invited

---

[99] *Equal Emp't Opportunity Comm'n v. WC&M Enters., Inc.*, 496 F.3d 393, 399-400 (5th Cir. 2007) (citations omitted).

[100] *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 828 (5th Cir. 2009) (quoting *Gibson v. Potter*, 264 F. App'x 397, 400 (5th Cir. 2008) (alterations in original)).

[101] *See* R. Doc. 55-4 at 76-77.

[102] *Id.* at 59-60.

[103] *Id.* at 61.

[104] *Id.* at 72.

[105] *Id.*

[106] *Id.* at 80.

to meetings, including unit meetings and manager's meetings where the State Registrar meets with the heads of departments and instrumental employees.[107]

In *Equal Employment Opportunity Commission v. WC&M Enterprises, Inc.*, the Fifth Circuit found that the district court applied an incorrect standard when it found that even if the plaintiff could prove that any harassment occurred, "he has not shown that it was so severe that it kept him from doing his job."[108] Instead, the Fifth Circuit found the fact that Plaintiff lost sales as a result of the alleged harassment, while not dispositive, was "certainly relevant to his hostile work environment claim."[109] Further, in *Rowe*, another retaliatory hostile work environment case from within this district, the Court, granting the defendant's motion for summary judgment, explained, "Rowe never was shut out from his work and never had his privileges revoked or his duties eliminated."[110] The *Rowe* court reasoned that this was "[f]ar from creating a material fact issue that his work environment was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment."[111] Conversely, in this case, Plaintiff's having her duties eliminated, by no duties being assigned to her, is sufficiently severe to affect a term, condition, or privilege of employment.

Beyond complaints regarding reprimands, isolation, and refusal to schedule meetings, Plaintiff has provided evidence demonstrating that she has continually been excluded from administrative meetings.[112] Specifically, Plaintiff testified:

> Any meetings that have been held, whether it be a unit meeting or meeting of a certain staff, I have not been invited to attend. I have never been invited

---

[107] *Id.* at 88.
[108] 496 F.3d 393, 400 (5th Cir. 2007).
[109] *Id.*
[110] *Rowe*, 88 F. Supp. 3d at 678 (citations and quotations omitted).
[111] *Id.*
[112] R. Doc. 61-3 at 33.

> to a manager's meeting where the State Registrar has met with the heads of departments be it supervisors or other you know instrumental employees, other program monitors. I've never been included in any of those meetings.[113]

Further, Plaintiff has provided evidence demonstrating a genuine issue of material fact exists as to whether Plaintiff should have been, but was not, invited to these meetings and whether this exclusion inhibited her from doing her job. Specifically, Richard Jackson, a human resources liaison at DHH, stated in his deposition that he believed Plaintiff was invited and attended those meetings.[114] However, when asked to check the emails sent by Devin George in which he set these meetings and invited attendees, Mr. Jackson confirmed that Plaintiff was not included on the list of invitees but that the list did include the names of other program monitors and members of the administrative staff.[115] Defendant has not specifically addressed Plaintiff's arguments with respect to her hostile work environment claim that she was not invited to meetings and that it affected her work. Instead, Defendant has merely reiterated that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace," and that Plaintiff's "allegations . . . do not rise to the level of severe or pervasive harassment."[116] The Court finds that Plaintiff has demonstrated a genuine issue of material fact exists as to whether the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of her employment.

---

[113] *Id.*
[114] R. Doc. 61-7 at 6.
[115] *Id.* at 10.
[116] R. Doc. 55-1 at 18.

e. <u>Whether DHH Knew or Should Have Known of the Harassment in Question and Failed to take Prompt Remedial Action</u>

The final element of a Plaintiff's retaliatory hostile work environment *prima facie* case is whether the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[117] "In this circuit, the fifth element does not apply when the alleged harasser is a supervisor."[118] DHH, in its motion for summary judgment, does not address whether Plaintiff can satisfy this element. Further, as the alleged harassers were Plaintiff's supervisors, the Court finds the fifth element does not apply to Plaintiff's retaliatory hostile work environment claims. Because Plaintiff has demonstrated a genuine issue of material fact as to all of the elements of her *prima facie* case, DHH's motion for summary judgment regarding Plaintiff's hostile work environment claim is denied.

<u>**CONCLUSION**</u>

For the foregoing reasons;

**IT IS ORDERED** that DHH's Motion for Summary Judgment[119] is **DENIED**.

**New Orleans, Louisiana, this 22nd day of May, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[117] *Zavala*, 2017 WL 274133 at *2.
[118] *Id.* (collecting cases).
[119] R. Doc. 55.